UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:24-CR-79-KAC-JEM |
| | ) | |
| CORNELIUS BARNES, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court for a report and recommendation on Defendant Cornelius Barnes, Jr.'s Motion to Dismiss Count Six of the Indictment [Doc. 60]. 28 U.S.C. § 636(b). Count Six charges Defendant with being a felon in possession of a firearm on July 12, 2024, in violation of 18 U.S.C. § 922(g)(1) [Doc. 13 p. 3]. Defendant challenges a finding that he is "dangerous" such that his Second Amendment right to possess a firearm for self-defense can be permanently curtailed [Doc. 60 p. 1]. He also challenges the Sixth Circuit's "dangerousness" standard and argues that § 922(g)(1) is facially unconstitutional [*Id.*].

For the reasons explained below, the undersigned finds Defendant's criminal history shows him to be dangerous. And this Court is bound by *Williams*. The District Judge should therefore **DENY** Defendant's Motion to Dismiss Count Six of the Indictment [**Doc 60**].

**I. BACKGROUND**

Defendant is charged with conspiring to distribute and possessing with intent to distribute fifty grams or more of methamphetamine (Counts One and Three), conspiring to distribute and possessing with intent to distribute four hundred (400) grams or more of a substance containing

fentanyl (Counts Two and Four), possessing a firearm in furtherance of drug trafficking (Count Five), and being a felon in possession of a firearm (Count Six) [Doc. 13].

Pursuant to Rule 12(b)(3)(B)(v), Defendant filed a Motion to Dismiss Count Six of the Indictment, seeking an evidentiary hearing on whether he is "dangerous" such that his Second Amendment right to possess a firearm for self-defense may be curtailed pursuant to the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024) [Doc. 60 p. 1]. Defendant also objects to the reasoning and holding in *Williams*, arguing that it "runs afoul of the holdings and reasoning" in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024) [*Id.*]. Finally, Defendant argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional in violation of the Second Amendment [*Id.*].

The Government filed a response in opposition [Doc. 64]. It argues that the Court should not consider Defendant's suggestion that *Williams* was wrongly decided [*id.* at 6] and should find that Defendant's prior convictions show that he is dangerous [*id.* at 1]. In support, it explains that on May 7, 2012, Defendant was convicted in Michigan state court of receiving and carrying a stolen firearm, two counts of carrying or possessing a firearm during the commission of a felony,[1] and home invasion in the second degree [*Id.* (citing Doc. 64-1 pp. 4, 6)]. The Government notes that as part of the plea negotiations relating to those convictions, two cases, each charging home invasion in the second degree and one also charging larceny in a building were dismissed [*Id.* at 1–2 (citing Doc. 64-1 pp. 2, 8)].

The Government contends that Defendant "continued his dangerous behavior [in 2019] when he committed an Armed Robbery," by robbing the occupants of a residence at gunpoint

---

[1] Under Michigan law, carrying or possessing a firearm during the commission of a felony is called "felony firearm" [*See* Doc. 64 p. 1 (citing Mich. Comp. Laws § 750.227b)].

2

[*Id.* at 2 (citing Doc. 64-2)]. During the incident, "[s]hots were fired, resulting in both [Defendant] and another individual being shot" [*Id.*]. The Government states that Defendant was charged with armed robbery, being a felon in possession of firearm, carrying a dangerous weapon with unlawful intent, carrying or possessing a firearm during the commission of a felony, and being a habitual offender (fourth offense) [*id*. (citing Defendant's Pretrial Services Report)], but "pled guilty to being a Felon in Possession of a Firearm . . . and a notice of enhanced punishment for subsequent felony following conviction of three or more felonies" in 2022 [*id*. (citing Doc. 64-1 p. 10)].

The Government asks the Court to deny Defendant's motion because he fails to carry his burden of demonstrating he is not dangerous and his prior convictions show him to be a danger [*Id*. at 3]. It contends that Michigan's second-degree home invasion offense "falls within the dimensions of generic burglary" and is "an inherently dangerous crime because burglary 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate'" [*Id.* at 5 (quoting *Malone v. United States*, 791 F. App'x 543, 546 (6th Cir. 2019) (citations omitted))]. It further notes that the Sixth Circuit held burglary "'pose[s] a significant threat of danger' and thus 'justif[ies] a finding of danger'" [*Id.* (quoting *Williams*, 113 F.4th at 662–63)].

The Government further contends that the circumstances surrounding Defendant's 2022 conviction for being a felon in possession of a firearm show he is dangerous [*Id.*]. It highlights that the 2022 conviction "was not the result of the defendant merely possessing a firearm, but rather stemmed from Defendant's active participation in a violent armed robbery," during which Defendant "entered another individual's home, held multiple victims at gunpoint, and stole their belongings" [*Id.* (citing Doc. 64-2)]. The incident "ultimately escalated into a shootout, during which [Defendant] and another individual were shot" [*Id.* (citing Doc. 64-2)]. The Government

3

argues that "[t]his brazen and violent conduct highlights the serious threat [Defendant] poses to the safety of others and underscores his willingness to engage in dangerous behavior" [*Id.* at 5–6].

Finally, the Government asserts that more recent conduct shows Defendant is dangerous [*Id.* at 6]. It states that Defendant "distributed large quantities of fentanyl and methamphetamine throughout the Knoxville area, both of which are widely recognized as highly dangerous substances" [*Id.*]. It further notes that Defendant "was also in possession of two firearms, one of which was reported stolen" and that "[t]he combination of illicit drugs and firearms presents an unmistakable and serious threat to public safety," and is undoubtedly a "dangerous combination" [*Id.* (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993))].[2]

The parties appeared before the undersigned for a motion hearing on July 11, 2025. Assistant United States Attorney ("AUSA") Caroline Poore was present on behalf of the Government. Attorney Robert Kurtz represented Defendant, who was also present.

At the hearing, Defendant stated that he sought to preserve for appellate review his objection to *Williams* as unconstitutional.[3] Defendant then argued that the criminal history the

---

[2] The Government also argued that the Court should deny Defendant's request for an evidentiary hearing. For the reasons explained in *United States v. Michaels*, No. 3:24-CR-102, Doc. 34 (E.D. Tenn. May 22, 2025), the undersigned disagrees that a hearing is not warranted.

[3] Defendant also objected to the documents the Government attached to its response [Docs. 64-1 to 64-3] as unreliable and argued in the hearing that the Government is relying on documents that would not qualify as what is commonly referred to as "*Shepard*" documents. *Shepard* documents encompass "charging documents" or "comparable judicial sources" that are used to determine "whether a defendant's prior offenses were 'committed on occasions different from one another' as that phrase is used in the ACCA[.]" *United States v. King*, 853 F.3d 267, 269, 276 (6th Cir. 2017) (citations omitted). He stated that the Government's attachments, which include police reports and incident reports, are unsworn documents and should not be relied on by the Court. The undersigned disagrees that the Court cannot consider the Government's attachments in this context. First, the Government primarily relies on the judgments and uses the police and incident reports as a supplement. Second, in *Williams*, the court recognized that "[c]ourts may consider any evidence of past convictions in the record, as well as other judicially noticeable information . . . when assessing a defendant's dangerousness." *Williams*, 113 F.4th at 660. In other

4

Case 3:24-cr-00079-KAC-JEM   Document 87   Filed 12/03/25   Page 4 of 12   PageID #: 505

Government relies on to establish dangerousness is too outdated and remote in time to support a finding of dangerousness. Specifically, Defendant contended that his conviction from May 2012, which arose from an arrest that occurred on January 15, 2012, thirteen and a half years ago, was not sufficient to make a dangerousness determination. Defendant also noted that his conviction in 2022 was for conduct that occurred in 2019, more than six years ago.

The Government responded that under *Williams*, if a defendant falls into one of the categories comprising an inherent threat of danger based on a prior conviction, it is difficult for the defendant to prove he is not dangerous. It noted that Defendant was convicted of second-degree home invasion in Michigan in 2012, which is an offense similar to generic burglary. The Government stated that generic burglary falls into the second category of inherently dangerous convictions as recognized by *Williams*. The Government argued that based on that alone, Defendant could be considered dangerous by the Court.

The Government also asserted that the Court can consider information beyond the convictions. It asserted that Defendant's prior felon-in-possession case from 2019 demonstrates his ongoing dangerousness, as it was only seven years after the home invasion in 2012. The Government further argued that unlike the typical felon- in-possession charge, the circumstances of Defendant's 2022 conviction involved a home invasion that led to a shootout in which Defendant and another individual were shot. The Government stated that while the conviction itself may seem minor, the conduct underlying the charge was dangerous.

Finally, the Government noted that Defendant's behavior underlying the current charges before the Court involved drug trafficking, with a high volume of drugs and two loaded firearms

---

words, it did not require a court to consider only *Shepard* documents. Finally, the burden rests with Defendant to show he is not a danger, not the Government.

(one stolen) found in a search of Defendant's residence. The Government concluded that the totality of Defendant's individual characteristics, his prior convictions, including his felon-in-possession conviction and its underlying facts, as well of the facts of the case before the Court, show Defendant is dangerous and that his motion to dismiss the count should be denied.

The matter is now ripe for adjudication.

## II. ANALYSIS

In *United States v. Williams*, the Court of Appeals for the Sixth Circuit held "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." 113 F.4th at 662–63. With respect to as-applied challenges, it explained that "for centuries," a disarmed felon "could demonstrate that their particular possession of a weapon posed no danger to peace." *Id.* at 657. "The relevant principle from our tradition of firearms regulation is that, when the legislature disarms on a class-wide basis, individuals must have a reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 661.

The Court of Appeals explained that a defendant shoulders the burden to show that he is not dangerous. *Williams*, 113 F.4th at 657 ("[I]n an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not dangerous."). When a court determines whether a defendant is dangerous, it "must focus on each individual's specific characteristics" and must "consider[] the individual's entire criminal record—not just the predicate offense" to the § 922(g)(1) charge. *Id.* at 657, 659–60 ("The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant."). "Courts may consider any evidence of past convictions in the record, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.* at 660.

6

The Court of Appeals further explained that "certain categories of past convictions are highly probative of dangerousness, while others are less so." *Id.* at 658. It set forth three categories of crimes and noted that a court need not "find 'categorical' matches to show a defendant is dangerous." *Id.* at 660 (citation omitted).

The first category "is crimes against the person." *Id.* at 658 (citation omitted). "This historical category was filled with dangerous and violent crimes like murder, rape, assault, and robbery." *Id.* (citation omitted). The Court of Appeals said that "[o]ffenses in this category speak directly to whether an individual is dangerous." *Id.* "[T]here is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* A defendant's burden to show otherwise is "extremely heavy." *Id.*; *see also United States v. Vaughn*, No. 23-5790, 2024 WL 4615853, at *2 (6th Cir. Oct. 30, 2024) ("Certain convictions, like aggravated robbery . . . are highly probative and, alone, would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that they could be constitutionally disarmed.").

The second category includes crimes that "put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659. It includes crimes such as drug trafficking and burglary. *Id.* "These crimes do not always involve an immediate and direct threat of violence against a particular person." *Id.* "[W]hile not strictly crimes against the person, [these crimes] may nonetheless pose a significant threat of danger." *Id.*

The final category includes "crimes like mail fraud or making false statements." *Id.* (citations omitted). "Often, such crimes cause no physical harm to another person or the community." *Id.* While this category "is the most challenging to address," the Court of Appeals

7

"trust[ed that] district courts will have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

Here, Defendant's history shows he is dangerous. In May 2012, Defendant was convicted of receiving and concealing a stolen firearm, possessing a firearm while trying to commit a felony, and home invasion in the second degree [Doc. 64-1 p. 6]. These convictions fall squarely within the second *Williams* category. *Williams*, 113 F. 4th at 659; *see also United States v. Craft*, No. 24-1624, 2025 WL 2888040, at *2 (6th Cir. Oct. 10, 2025) (finding the defendant's "conviction for second-degree home invasion [in Michigan] makes it 'very difficult' for [the defendant] to 'show[] he is not dangerous'" (quoting *Williams*, 113 F.4th at 663) (alteration in original)).

But there is more. In October 2019, Defendant was charged with armed robbery, being a felon in possession of a firearm, and felony firearm [Doc. 64-2 p. 30]. Defendant pled guilty to being a felon in possession of a firearm and a notice of enhanced punishment for a subsequent felony following conviction of three or more felonies [Doc. 64-1 p. 10]. The Sixth Circuit in *Williams* "included Williams' prior conviction for felon-in-possession of a firearm as the kind of felony that demonstrates dangerousness. The Sixth Circuit thus sees felon-in-possession, which is not a crime against a person, as falling in the second category of crimes which . . . carries with it the possibility that violence or harm to others might occur during its commission." *United States v. Jennings*, 754 F. Supp. 3d 763, 769 (E.D. Mich. 2024).

The Court of Appeals for the Sixth Circuit has also explained that *Williams* allows a court to "consider how an offense was committed." *United States v. Morton*, 123 F.4th 492, 500 (6th Cir. 2024) (citing *Williams*, 113 F.4th at 663 (rejecting a "categorical approach")). Looking at the underlying conduct of the 2019 offense, the undersigned finds it further demonstrates dangerousness. Defendant was participating in an armed robbery, during which he entered a

8

victim's home, held many individuals at gunpoint, and took their belongings [Doc. 64-2 p. 3]. The offense resulted in a shootout, during which Defendant and another individual were shot [*Id.*].

Defendant argued at the hearing that the age of these convictions lessens their weight and that the Court should not consider them when deciding whether Defendant is dangerous. But the Court of Appeals in *Williams* did not address how the age of a prior conviction should impact a district court's determination of "dangerousness" in an as-applied challenge. The Court of Appeals did, however, instruct the district courts to "evaluate a defendant's entire criminal record." *Id.* at 663. The undersigned therefore considers the entirety of Defendant's criminal history in its analysis. *United States v. Bell*, 755 F. Supp. 3d 992, 999 (E.D. Mich. Oct. 28, 2024) ("[A]lthough [defendant's] crimes are old, the repeated nature of his drug trafficking offenses indicates dangerousness."); *see also United States v. Martin*, No. 24-3750, 2025 WL 1913185, at *6 (6th Cir. July 11, 2025) (holding that because a defendant committed a burglary in 2012 he was "among the class of 'dangerous' individuals whom the government may disarm consistent the Second Amendment"); *United States v. Lyle*, No. 23-cr-20098, 2024 WL 4819572, at *7–9 (E.D. Mich. Nov. 18, 2024) (finding a defendant dangerous where his prior drug trafficking convictions occurred in 2012 and 2016); *United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270, at *3 (E.D. Tenn. Oct. 9, 2024) ("[T]he Court cannot look past Defendant's multiple prior convictions for serious crimes [in 2009 and 2016], even if his recent efforts to reverse course prove admirable."). *But see Bell*, 755 F. Supp. 3d at 1000 (finding a single concealed weapon conviction from thirty years ago when defendant was eighteen years old is of "weak" probative value). *Accord United States v. Pickett*, 757 F. Supp. 3d 813, 818 (M.D. Tenn. Nov. 21, 2024) (determining that the defendant's lengthy intervening time in prison and the repeated nature

of his drug trafficking offenses diminished the impact of his argument that his convictions were over ten years old).

Even if the undersigned gives Defendant's prior convictions less weight because of their age, the undersigned may also consider the actions underlying the charges currently pending. *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) ("In determining [the defendant's] dangerousness, then, we look the offense conduct . . . as well as [his] previous convictions . . . ."). Specifically, it is alleged that on July 12, 2024, officers with the Knoxville Police Department's Organized Crime Unit and detectives with the Knox County Sheriff Office's Narcotics Unit executed a search warrant at the address of 5101 Asheville Highway, Apartment 1, Knoxville, Tennessee [Doc. 1 p. 1]. At the apartment, officers recovered: approximately 750 grams of a substance that field tested positive for methamphetamine, approximately 474 grams of a substance that field tested positive for fentanyl, two loaded handguns (one of which was previously reported stolen), $5,047 in United States currency, six cellular telephones, and various items used to manufacture and distribute narcotics, including plastic baggies, a kilogram press, electronic scales, and cutting agents commonly used to dilute narcotics [*Id.* at 1–2]. As the search warrant was being executed, two occupants later identified as Michael Alexander Mahone and Cornelius Barnes, Jr., attempted to flee out of a window at the rear of the apartment [*Id.* at 2]. Defendants were arrested inside of the apartment unit, but not before Defendant Barnes discarded a red backpack outside the back window [*Id.*]. Law enforcement searched the bag and recovered a vacuum sealed bag of a substance believed to be fentanyl, two large bags of a substance believed to be methamphetamine, a loaded Taurus model G2s 9mm handgun, a loaded Taurus model G3 9mm handgun, and two electronic scales [*Id.*].

Defendant is alleged to have distributed large quantities of methamphetamine and fentanyl, which are considered highly dangerous substances. *See United States v. Hines*, No. 3:22-cr-157, 2024 WL 4252569, at *5 (N.D. Ohio Sept. 12, 2024) (noting that "the fentanyl trafficking offense was named in *Williams* as a type of offense likely to lead to a finding of dangerousness" (citing *Williams*, 113 F.4th at 659)); *see also United States v. Washington*, No. 3:22-CR-72, 2022 WL 17168604, at *3 (E.D. Tenn. Nov. 22, 2022) (observing that "[a]s little as two milligrams of fentanyl can be lethal" and that "[m]ethamphetamine trafficking also presents a substantial risk to human life" (citations omitted)). The Court in *Williams* noted that that "[d]rug trafficking is a serious offense that, in itself, poses a danger to the community" *Williams*, 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)), and "often leads to violence," *id.*(citing *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). Furthermore, courts have recognized that "[i]t is not a stretch to conclude that one who must arm himself due to the very danger of the crime in which he is involved is, by virtue of that fact, also dangerous." *United States v. Risner*, 129 F.4th 361, 369 (6th Cir. 2025).

Aside from arguing points related to the age of his criminal history, Defendant offered no evidence to show he is not dangerous, and the burden lies with him. Accordingly, and for the reasons discussed herein, the undersigned concludes Defendant fails to show he is not dangerous. As such, § 922(g)(1) is not unconstitutional as applied to him. Additionally, the Court is bound by the Sixth Circuit precedent on facial constitutionality of 18 U.S.C. § 922(g)(1). *See United States v. Greely*, No. 23-1978, 2025 WL 1797223, at *5 (6th Cir. June 30, 2025) ("There have been no developments in the case law to indicate that we must depart from *Williams*."). *Accord Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of [the Sixth Circuit]

11

Case 3:24-cr-00079-KAC-JEM | Document 87 | Filed 12/03/25 | Page 11 of 12
PageID #: 512

cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." (citation omitted)).

## III. CONCLUSION

For the reasons explained herein, the undersigned respectfully **RECOMMENDS**[4] that the District Judge **DENY** Defendant's Motion to Dismiss Count Six of the Indictment [**Doc 60**].

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).